STATE v. EDWARD MUZZY.

October Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed November 21, 1913.

*Animals — Malicious Killing — Statutes —Construction—"Wilfully"—"Maliciously"—Evidence—Admission — Witnesses — Husband and Wife — Competency — Review—Presumptions.*

In a prosecution for maliciously killing another's heifer that had strayed into respondent's premises, evidence that respondent, knowing who owned the heifer, went out at night with his nephew and killed it, buried the hide, and returned about midnight with some of the meat was sufficient to carry the case to the jury.

Under P. S. 5815, providing that "a person who wilfully and maliciously kills, wounds, maims, or disfigures" cattle shall be imprisoned, "wilfully" means intentionally, and "maliciously" means a deliberate and evil intention to injure the owner by the destruction of his property in malevolent defiance of the right of ownership.

P. S. 1592 makes spouses exactly as competent witnesses for or against each other as are other witnesses, except as to communications with each other, or where, in the opinion of the court, their testimony would be a violation of marital confidence.

Where the record shows nothing on the subject it will be presumed on review that the trial court, in allowing respondent's wife to testify to his tacit admissions, was of the opinion that to receive the testimony was not to permit a violation of marital confidence.

The question of whether the reception of testimony of one spouse against the other is in violation of marital confidence is for the determination of the trial court, and is not ordinarily reviewable.

INFORMATION for maliciously killing another's heifer. Plea, not guilty. Trial by jury at the June Term, 1913, Lamoille County, *Fish*, J., presiding. Verdict, guilty; and judgment and sentence thereon. The respondent excepted. At the close of all the evidence the court denied respondent's motion for a

directed verdict, to which he excepted. The opinion states the case.

*Frederick G. Fleetwood* for the respondent.

*M. P. Maurice,* State's Attorney, for the State.

HASELTON, J. This was an information charging the respondent with feloniously, wilfully and maliciously killing a heifer, the property of one Dewey. The information was brought under P. S. 5815. On trial by a jury a verdict of guilty was returned, judgment was rendered and sentence was imposed.

At the close of the evidence the respondent asked the court to direct a verdict of acquittal on the ground that in order to make out the crime charged in the information evidence of malice towards the owner of the animal killed must be shown and that there was no such evidence in the case; and upon the ground that the entire evidence did not show a felonious, wilful and malicious killing of the heifer. The motion was overruled and the defendant excepted.

There was evidence tending to show that a heifer belonging to Dewey strayed onto the premises of the respondent, that the respondent had reason to know that the heifer was not his but Dewey's, and that nevertheless the respondent and his nephew Leon Muzzy went out in the night time and killed the heifer, returning with some of the meat at about midnight or a little after, that they buried the hide.

The evidence was sufficient to be submitted to the jury on the question of whether the respondent was guilty of killing the heifer wilfully and with malice towards the owner of the animal. The case was submitted under instructions to which no exception was taken in that regard or in any other. There was no error in overruling the respondent's motion for a directed verdict of acquittal.

In so ruling we hold that the word "wilfully" as here used means intentionally and by design. *State* v. *Burlington Drug Co.,* 84 Vt. 243, 252, 78 Atl. 882; *Town of Fletcher* v. *Kezer,* 73 Vt. 70, 50 Atl. 558; *Buchanan* v. *Cook,* 70 Vt. 168, 40 Atl. 102; *Newell* v. *Whitingham,* 58 Vt. 341, 2 Atl. 172.

And we hold that the word "maliciously" as here used has a darker meaning and requires that, to the establishment of the

crime, there should be found in addition a deliberate and evil intention on the part of the respondent to wrong and injure the owner of the heifer by the destruction of his property in wanton and malevolent defiance of the rights of individual ownership. *Town of Fletcher* v. *Kezer,* 73 Vt. 70, 50 Atl. 558.

In *State* v. *Wheeler,* 3 Vt. 344, 23 Am. Dec. 212, heard in 1830, the respondent, Wheeler, was charged with feloniously, wilfully and maliciously killing a steer the property of one Davis. The Court held that no crime was charged but a trespass only, and suggested that if such an act ought to be proceeded against criminally the legislature should make the necessary provision. Accordingly, in 1833, by No. 10, of the Public Acts of that year, such an act as was there charged, and as is here charged, was made a crime. The statute of that year has with some changes since remained the law, and so far as it goes it follows a provision in the Statute of 9 Geo. I, Chap. 22; and except that the offence may be committed by day as well as by night it is similar to a provision of 22 and 23 Charles II, Chap. 7, entitled "an act to prevent the malicious burning of houses, stacks of corn and hay, and killing or maiming of cattle."

In construing our statute we have been aided by a consideration of the construction put upon the English statutes referred to.

The statute does not use the word "feloniously," but the offence defined may be punished by imprisonment in the State's prison, and therefore is a felony under our statute. P. S. 5983. So the information uses the word "feloniously," but its use requires no proof distinct from that of wilfulness and malice.

The respondent's wife was a witness against her husband and, among other things, testified that, on the night to which the killing of the heifer was referred, Leon Muzzy said to her, in the presence of her husband, "we are going out skunk hunting tonight"; and that after the killing Leon told her, in the presence of her husband, what had been done with the hide.

P. S. 1592, provides as follows: "Husband and wife shall be competent witnesses for or against each other in all causes, civil or.criminal, except that neither shall be allowed to testify against the other as to a statement, conversation, letter or other communication made to the other or to another person; nor shall either be allowed in any case to testify as to a matter which, in the opinion of the court, would lead to a violation of marital confidence."

The wife's evidence referred to was received under objection and exception grounded on this statute. But under this statute admissibility of the testimony of husband and wife for or against each other is the rule and inadmissibility is the exception. Such admissions as may be inferred from silently standing by while an accomplice unfolds the plan of a crime or narrates the details of it stand under this statute like conduct tending to show guilt.

Prior to the enactment of the statute in question we had in force a statute which permitted a married woman to testify in certain cases in which her husband was a party. But it was provided tersely that nothing in the provision should authorize or permit a married woman to testify "to admissions or conversations of her husband." V. S. 1241. We also had a provision that where husband and wife were properly joined in an action or where either had acted as the agent of the other in business transactions they should both be competent witnesses except that neither should be permitted to testify "as to conversations or admissions of the other."

The statute which we are construing constituted a new departure in the law of evidence by making husband and wife competent, as a rule, to testify for or against each other in all cases whatsoever, and in making this departure it did not meet the purpose of the legislature to make the exception cover all admissions, but at the cost of some circumlocution the language of previous statutes was departed from and tacit admissions when relevant were, together with evidence of relevant conduct, left to be governed by the general rule established by the statute unless, in the opinion of the court, a violation of marital confidence would be involved.

It does not appear that there was an express ruling that the evidence received would violate no marital confidence, but the contrary does not appear, and so the presumption is that in admitting the evidence the court was of opinion that to receive it was not to permit a violation of marital confidence. *Severance* v. *Usher*, 86 Vt. 523, 86 Atl. 741; *Prior* v. *Wilbur*, 63 Vt. 407, 22 Atl. 74.

As has been decided, *State* v. *Neiburg*, 86 Vt. 394, 85 Atl. 769, and as the respondent's counsel concedes, the question of whether the evidence was in violation of marital confidence was

for the determination of the trial court and is not ordinarily reviewable. It is not reviewable here.

*Judgment that there is no error in the proceedings and that the respondent takes nothing by his exceptions. Let execution be done.*